UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

SUSAN KUROWSKI,

    Plaintiff,

v.                                              ACTION NO. 4:12CV137

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Susan Kurowski seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance under Title II of the Social Security Act. 42 U.S.C. §§ 401 – 434. She argues that the ALJ improperly weighed the opinions of her treating physicians and failed to account for non-exertional limitations caused by her fibromyalgia and related disorders.

After reviewing the entire record, the undersigned finds that the ALJ properly explained the weight given to the various medical source opinions and substantial evidence supports his decision. Accordingly, this report recommends that the final decision of the Commissioner be affirmed.

### I.    PROCEDURAL BACKGROUND

Kurowski applied for disability insurance benefits ("DIB") in February 2009, alleging disability beginning November 15, 2007. (R. 150). The Commissioner denied her applications initially (R. 114-16), and upon reconsideration. (R. 122-28). Kurowski requested an

administrative hearing, which was conducted on December 20, 2010. (R. 25-53).

Following the hearing, Administrative Law Judge ("ALJ") Tom Duann concluded that Kurowski was not disabled within the meaning of the Social Security Act, and denied her claim. (R. 110-119). The Appeals Council denied review of the ALJ's decision (R. 1-5), thereby making the ALJ's decision the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), Kurowski filed this action seeking judicial review of the Commissioner's final decision. This case is now before the Court to resolve the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

At the time of the hearing, Kurowski was 53, college educated, with previous work experience as a registered nurse and medical receptionist. (R. 7, 34, 49, 192, 197). Her work as a medical receptionist was generally sedentary, and required her to lift no more than five pounds, walk for one hour and stand for one hour. (R. 49, 198). Although she was not working, Kurowski testified at the hearing that she went to the gym three times per week, attended church regularly, but otherwise spent her free time watching TV, surfing the internet to discuss her medical conditions, and reading. (R. 32-34, 44, 202, 207, 251).

The medical records reflect Kurowski's treatment with two primary care physicians, Dr. Robert McClain (R. 289-91), and Dr. Sinclair McCracken (R. 324-68, 419-21, 451-57, 539-41). She also treated with a pain management specialist, Dr. Robert Hansen (R. 393-97, 553-63).

Kurowski was diagnosed with fibromyalgia as a result of her response to certain trigger points considered to be indicia of the disease. (R. 331). Her medical records, however, are largely limited to her physicians' recounting of her various subjective complaints, with little other objective evidence of any work-limiting condition. Her physicians generally found her

physical examinations normal. She had a normal gait and station, appeared well-developed and well-nourished and in no acute distress. (R. 324, 355, 363, 448). Although not generally noted in detail, the observations which were recorded reflect that Kurowski generally had a normal range of motion, no joint tenderness, normal reflexes and normal strength and muscle tone. (R. 396, 448). Throughout her medical treatment she displayed normal judgment and insight and intact recent and remote memory with an appropriate mood. (R. 327, 355, 359, 363, 396, 507). It is also true that despite her essentially normal physical exams, Kurowski repeatedly reported to her physicians that she had severe pain and overwhelming fatigue, which led both to provide statements opining that she was not capable of gainful employment. (R. 583, 600).

In addition to her treating physicians, Kurowski was examined by Ph.D. Kevin McWilliams, and a consultative examiner, Dr. Seth Tuwiner. Dr. McWilliams evaluated Kurowski – based on her complaint of ADD – but found no evidence of any mental health disorder that would preclude Kurowski from working. (R. 298). His notes also reflect no evidence of pain or fatigue. He stated that her "gait and posture appeared unimpaired. She walked briskly with no overt evidence of being fatigued or in pain." (R. 297). Throughout his examination Kurowski was cooperative, alert, well groomed, neatly dressed and attentive with a normal affect, happy mood, normal speech, and normal eye contact. Id. Although Kurowski reported feeling "persistently fatigued," she displayed no signs of fatigue when examined by Dr. McWilliams. Id. He described her mental pace and general energy level as average, noted that she denied any social withdrawal and demonstrated adequate concentration throughout the interview. Id. He also recorded that Kurowski could manage her activities of daily living, including driving, shopping, preparing meals, and performing routine home cleaning tasks. Id.

Likewise, Dr. Tuwiner's examination revealed no physical symptoms which would prevent Kurowski from working. She had normal reflexes, range of motion, sensation, motor skills and gait. Dr. Tuwiner found that she could sit, stand, walk, lift and carry without limitation. (R. 302). Dr. Tuwiner observed that her complaints of fatigue could be related to her thyroid or adrenal disorders, or to her diagnosis of Epstein-Barr virus exposure. Id. He noted that despite her diagnosis she had not recently seen an endocrinologist, or an infectious disease specialist. Similarly, despite her diagnosis of fibromyalgia, she had not seen a rheumatologist. (R. 300). Based on his exam, Dr. Tuwiner concluded that Kurowski had no physical limitations on her ability to work. (R. 302).

In addition to the consulting examiners, three record reviewers, Dr. Deaver, Dr. Kadian and Dr. Cruz, all reviewed Kurowski's medical records and offered consistent opinions concerning the effect of her diagnosed medical conditions on her ability to work. Dr. Deaver, a state agency psychologist, found Kurowski had no, or only mild difficulties. Like Dr. McWilliams, his review of the records revealed that Kurowski reported fatigue and pain caused her decreased concentration, memory, attention and ability to follow instructions, but the mental status examinations he reviewed did not support such limitations. (R. 107).

Dr. Kadian, a state agency physician, reviewed the record after Kurowski's request for reconsideration. (R. 99-113). He found Kurowski capable of performing medium work despite her fibromyalgia, hypothyroidism, and hypoadrenalism. Dr. Kadian reviewed the records of Drs. McCracken, McWilliams and Tuwiner, and noted that although Kurowski complained of pain and fatigue, she appeared to have adequate muscle strength, could stand without assistance, and required no postural limitations. (R. 112-13). Dr. Kadian explicitly disagreed with Dr.

Tuwiner's finding of no limitations, concluding that Kurowski retained the ability to perform only medium work based on her self-report of fatigue and pain. (R. 109). Dr. Kadian also reviewed both source opinions from Dr. Hansen and Dr. McCrackin, but noted that they offered opinions reserved to the Commissioner and were supported by no objective evidence other than the trigger point mapping. (R. 110-111).

Finally, at the request of the ALJ, Dr. Cruz reviewed the medical records and answered interrogatories. His review of the records concluded that Kurowski could lift up to 50 pounds, sit, stand or walk for eight hours in a work day, walk without an assistive device and reach, handle, finger, balance, kneel, and push or pull without limitation. He also found no evidence of postural limitation, concluding that the records he reviewed showed no orthopaedic limitations. (R. 406-11).

In addition to the medical evidence and testimony from Kurowski, the ALJ relied upon a Vocational Expert ("VE"). The VE described Kurowski's previous work as a medical receptionist as sedentary, semi-skilled work. She also testified concerning required number of hours and absences or breaks available to those employed full time. (R. 48-50).

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389,

401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). "It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJs determination is not supported by substantial evidence on the record, or the ALJ made an error of law. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this

definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. § 404.1520. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective

medical facts; (2) the diagnoses, and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hayes, 907 F.2d at 1456.

1.   **ALJ's Decision.**

In this case, the ALJ made the following findings under the five part analysis: (1) the ALJ found that Kurowski had not engaged in substantial gainful activity since November 15, 2007, the alleged onset date; (2) Kurowski had severe impairments of Epstein Barr, fibromyalgia, hypothyroidism and hypo-adrenalism; (3) her combination of impairments did not meet one of the listed impairments in Appendix 1; (4) Kurowski had the RFC to perform the full range of light work, and as a result could perform her past relevant work as a medical receptionist. In addition, the ALJ made an alternative finding that based on her vocational profile, Kurowski was "not disabled" under the Medical Vocational Guidelines. (R. 12-19).

In her motion for summary judgment, Kurowski argues the ALJ failed to give proper weight to the opinions of her treating physicians, particularly Dr. Hansen and Dr. McCracken. She also claims the ALJ failed to account for non-exertional limitations associated with her impairments and that a correct assessment of these limitations would direct a finding of disabled under the Medical Vocational Guidelines. This report will review each argument in turn.

8

2. **The ALJ properly evaluated the evidence bearing on Kurowski's RFC and substantial evidence supports his decision that she could perform the full range of light work.**

Kurowski first argues that the ALJ erred in determining her RFC, which is defined as the plaintiff's maximum ability to work despite her impairments. 20 C.F.R. § 404.1545(a)(1); see SSR 96-9P, 1996 WL 374185, at *2 (S.S.A. July 2, 1996) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis."). When a plaintiff's impairments do not meet or equal a listed impairment under step three of the sequential analysis, the ALJ must then determine the plaintiff's RFC. 20 C.F.R. § 404.1520(e). After doing so, the ALJ uses that RFC at step four of the sequential analysis to determine whether the plaintiff can perform his past relevant work. Id. § 404.1545(a)(5)(i). If it is determined that the plaintiff cannot perform past relevant work, the ALJ uses the RFC at step five to determine if the plaintiff can make an adjustment to any other work that exists in the national economy. Id. § 404.1545(a)(5)(ii).

At the administrative hearing level, the ALJ alone has the responsibility of determining RFC. Id. § 404.1546(c). RFC is determined by considering all the relevant medical and other evidence[1] in the record. Id. §§ 404.1545(a)(3) and 404.1527(b). Relevant evidence includes "information about the individual's symptoms and any 'medical source statements'-i.e., opinions about what the individual can still do despite his or her impairment(s)-submitted by an individual's treating source or other acceptable medical sources." SSR 96-8P, 1996 WL 374184,

---

[1] "Other evidence" includes statements or reports from the claimant, the claimant's treating and nontreating source, and others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how impairments or symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529(a).

9

at *2 (S.S.A. July 2, 1996). In this case, the ALJ found that Kurowski had the RFC to perform the full range of light work.

### 3. The ALJ properly explained the weight assigned to medical opinions.

Kurowski contends that the ALJ did not properly evaluate the medical evidence and erred by giving improper weight to the opinions of Drs. McCracken and Hansen. As stated above, the ALJ alone has the responsibility for determining RFC. In doing so, the ALJ must consider the objective medical evidence in the record, including the medical opinions of the treating physicians and the non-examining medical consultants. In assigning weight to any medical opinion, the ALJ must consider the following factors: (1) "[l]ength of the treatment relationship"; (2) "[n]ature and extent of the treatment relationship"; (3) degree of "supporting explanations for their opinions"; (4) consistency with the record; and (5) the specialization of the physician. 20 C.F.R. § 404.1527(c).

Generally, the opinion of a treating physician is given more weight than that of a non-treating or non-examining medical source. Id. § 404.1527(c)(1)-(2). A treating physician's opinion merits "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." Id. § 404.1527(c)(2). Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

Because the regulations require the ALJ to evaluate every medical opinion, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in [the regulations]."

10

SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996). When the ALJ determines that the treating physician's opinion should not be given controlling weight, the ALJ must articulate "good reasons" for his decision. Id. at § 404.1527(c)(2). When the evidence is such that reasonable minds could differ as to whether a claimant is disabled, the ALJ, and ultimately the Commissioner, must resolve any inconsistencies in the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

Here, the ALJ properly evaluated the opinions of the medical providers and non-examining consultants and provided detailed reasons for his assessment. The undersigned finds no error in that assessment. In his decision, the ALJ found, after "careful consideration of the entire record," that Kurowski was capable of performing the full range of light work, as defined by 20 C.F.R. 404.1567(b). In making the RFC determination, the ALJ provided a review of Kurowski's treatment record including the records of Drs. Hansen and McCracken, both of whom opined that Kurowski's pain and fatigue rendered her unable to work. (R. 16-17).

After noting that each of these doctors found Kurowski had indicated pain at 14 of the 18 trigger points for fibromyalgia, the ALJ found little other objective evidence in their medical records to support her claims of work-limiting disability. He noted that Dr. McCracken recorded several of Kurowski's subjective observations, including low energy, fatigue, joint or muscle pain, daytime complaints of somnolence and lack of focus, but observed that her physical examinations were "essentially unremarkable." (R. 16, citing R. 417-505; 539-541). Similarly, the ALJ noted Dr. Hansen's documentation of the trigger points as well as Kurowski's complaints of fatigue and "mental inefficiency." (R. 16). He observed, however, that Kurowski exercises two to three times per week and that while her subjective complaints were regular, Dr.

11

Hansen's records document few objective findings. The ALJ cited the absence of objective findings in the records of both Drs. Hansen and McCracken, and observed that they had offered "only conservative pain treatments." (R. 17). While noting that both doctors had offered specific opinions that Kurowski was unable to work, he afforded their opinions "little evidentiary weight . . . because . . . they are not supported by objective findings." Id. With regard to the medical source statements produced by Kurowski's attorney, specifically on the issue of disability, the ALJ noted that such opinions are never entitled to controlling weight because the decision on disability is reserved to the Commissioner. Id.

After reviewing the medical records relied upon by the ALJ, the undersigned finds that his decision to afford their opinions on disability little weight is supported by substantial evidence. As the ALJ correctly noted, both Dr. McCracken and Dr. Hansen recorded numerous complaints by Kurowski of pain and fatigue, but their physical examinations revealed little objective evidence of her condition. For example, on her first visit to Dr. McCracken, Kurowski's chief complaint was recorded as "many issues," but her physical exam was almost entirely normal. She was observed to have a normal gait and station, normal reflexes, and normal judgment and insight. (R. 448). At each of her regular visits with either Dr. McCracken or Dr. Hansen, Kurowski was noted to be alert and oriented, and in no acute distress.[2] (R. 327; 331; 335). Aside from the referenced "trigger point" map, Kurowski's medical records contain virtually no objective measures of physical limitation. For example, there are no measures of reduced range of motion, abnormal reflexes, muscle wasting, limited strength or other indicia of severe and disabling pain. (R. 396). Instead, the objective measures which were recorded in detail by the

---

[2] The abbreviation A/O NAD is frequently used.

consultative examiner, neurologist Dr. Tuwiner, show virtually no evidence of physical limitation. In August 2009, his physical exam showed Kurowski had a normal gait, normal muscle mass, and 5/5 muscle strength. Kurowski had the ability to walk heel to toe without difficulty, her range of motion in each of ten recorded measurements was normal and she had no joint deformity or crepitus. (R. 301). The ALJ relied on these objective measurements in reaching his conclusion to afford Dr. McCracken's and Dr. Hansen's opinions little weight. The undersigned concludes they also constitute substantial evidence to support his decision. Dr. Tuwiner found Kurowski had no functional limitations on her ability to work, an opinion the ALJ afforded significant weight due to its consistency with the weight of the evidence. The ALJ also noted that Kurowski's daily activities were not significantly limited. She testified that she could care for her personal hygiene, prepare meals, exercise two to three times per week at the gym, perform household chores, drive, shop for groceries, attend church and activities with her family and handle her own finances. (R. 17; 202-07; 251-52).

In fact, the ALJ noted that Dr. Tuwiner's opinion, as well as the opinion of Dr. Cruz, a non-examining source who reviewed Kurowski's records, supported a much higher ability to work, but he afforded her "some benefit of the doubt . . . with regard to her subjective complaints." (R. 18). Both Dr. Cruz and Dr. Tuwiner essentially found no physical limitations on Kurowski's ability to work. Dr. Kadian, who viewed Dr. Tuwiner's examination as well as records from Dr. Hansen and Dr. McCracken, had concluded Kurowski could perform medium work. Considering the voluminous evidence of Kurowski's subjective complaints, and giving her "some benefit of the doubt," the ALJ found Kurowski only capable of the full range of light work. This finding is supported by substantial evidence.

The ALJ's decision to accord considerable weight to Dr. Tuwiner's opinion was proper. Dr. Tuwiner was an examining source and his findings are not inconsistent with other evidence in the record. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). Two other DDS medical consultants found Kurowski capable of performing medium work. The ALJ found Kurowski to be more limited than these opinions and accorded them only moderate weight.

Moreover, as noted, the opinions offered by Dr. McCracken and Dr. Hansen relate to an issue reserved to the Commissioner. A treating physician's opinion that her patient is disabled from all work is not entitled to controlling weight. Instead, the ALJ must look to the medical sources for evidence of the claimant's abilities and the limitations imposed by her severe impairments, and assess those opinions in light of all the evidence in the record. Partlow v. Astrue, No. 2:09cv474, unpublished, 2011 WL 320955 at *2 (E.D. Va. 2011) (citing 20 CFR § 404.1527(e)). A diagnosis of fibromyalgia alone is insufficient to establish disability. Like any other condition, the evidence must establish that the "impairment so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." SSR 12-2p, 2012 WL 3104869 at *6. In this case it does not.

Having reviewed the ALJ's decision and the aforementioned reasons articulated in that decision, the undersigned finds that the ALJ supplied "good reasons" for not giving "controlling weight" to the opinions of Dr. Hansen and Dr. McCracken concerning Kurowski's ability to work. Nonetheless, to the extent they conflict with other medical evidence, the law provides that "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. It is not this Court's function to

re-weigh the evidence, rather if the ALJ has committed no error of law, and substantial evidence supports his conclusions, the decision should be affirmed.

4. **The ALJ did not err in not applying the Medical Vocational Guidelines, and his finding that Kurowski was "not disabled" was supported by substantial evidence.**

The ALJ found that Kurowski had the RFC to perform the full range of light work,[3] and as a result could perform her past work as a medical receptionist. (R. 14-18). Kurowski has not challenged the characterization of her past work as sedentary. Thus, if the ALJ's RFC finding is supported by substantial evidence, that would be sufficient to sustain his finding that Kurowski was not disabled. Nevertheless, Kurowski also challenges the ALJ's alternative finding that Kurowski was "not disabled" under the Medical Vocational Guidelines (Grid Rules) based on Kurowski's age, education and experience. (R. 19) (citing 20 CFR Part 404, Subpt P. Appx. 2). Her counsel claims that because her fibromyalgia also imposes non-exertional limitations not specifically addressed by the ALJ, these non-exertional limits would erode the available base of light work and require a finding that Kurowski was "disabled" under the Grid Rules. This argument misunderstands the role of the Grid Rules in cases which fall between exertional levels.

When an individual's RFC falls between exertional levels the Grid Rules do not apply. Golini v. Astrue, 483 F. App'x 806, 808 (4th Cir. 2012). The Commissioner "may rely on the [Grid Rules] only in 'appropriate cases.'" Id. The Grids are not appropriate when any "one or more of the criteria of a [grid] rule are not met." SSR 83-10, 1983 WL 31251, at *1. The Grid

---

[3] Light Work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Additionally, the full range of light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5-6.

15

Rules and SSR 83-12 both note that when a claimant's RFC is between exertional levels, then not all criteria are met, and the Grid Rules do not direct a conclusion. 20 C.F.R. Pt. 404, Sbpt. P, App. 2, 200.00(d); SSR 83-12, 1983 WL 31253, at *1. Rather, in these cases, the Grid Rules provide a framework and guidance to the ALJ as the decision-maker. Golini v. Astrue, No. 2:10cv525, 2011 WL 4409223, at *5 (E.D. Va. Aug. 16, 2011); 20 C.F.R. Pt. 404, Sbpt. P, App. 2, 200.00(d); see SSR 83-12, 1983 WL 31253. Additionally, when the ALJ imposes exertional and nonexertional limitations, the Grid Rules do not apply and the Grid rules are used "in conjunction with the definitions and discussions provided in the text of the regulations, as a framework for decision making." SSR 83-14, 1983 WL 31254, at *1; see also Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) ("[W]hen a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines."); 20 C.F.R. § 404.1569a; 20 C.F.R. Pt. 404, Sbpt. P, App. 2 § 200.00(e)(2).

In this case, the ALJ determined that Kurowski could perform the full range of light work. As set forth above, the undersigned finds this conclusion to be supported by substantial evidence. However, even if her RFC included nonexertional limitations, the Grid Rules would not direct a conclusion of disabled. Instead, the Grids would be used as a framework by the ALJ at steps four and five to determine if the individual is capable of performing past relevant work or any other work. See 20 C.F.R. Pt. 404, Sbpt. P, App. 2 § 200.00(e)(2).

To determine disability when the RFC indicates a combination of exertional and non-exertional limitations, the ALJ must first consider whether the claimant is disabled based on strength (exertional) limitations alone. 20 C.F.R. Pt. 404, Sbpt. P, App. 2 § 200.00(e)(2); 20 C.F.R. § 404.1569a(d). Kurowski was not disabled based on exertional limitations alone, as her

RFC permitted the full range of light work and therefore, Grid Rule 201.10 did not apply. Moreover, even if the ALJ had found the non-exertional limitations applied, and even if they eroded the available base of light work, Kurowski would still be capable of performing her past relevant work as a medical receptionist. The undisputed evidence established that this work was sedentary. (R. 49).

In light of Fourth Circuit precedent, the regulations, and related policy statements the undersigned finds that the ALJ correctly determined that the Grid Rules applied to direct a finding of not disabled. Moreover, even if Kurowski's RFC had placed her between the sedentary and light ranges, because she suffered from both exertional and non-exertional limitations, a finding of not disabled would not be directed under the Rules as she could still perform her past relevant work as a medical receptionist. Accordingly, substantial evidence supports the ALJ's conclusion that Kurowski was not disabled.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 11), DENY the Plaintiff's Motion for Summary Judgment (ECF No. 8), and AFFIRM THE Commissioner's decision denying disability.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/ 
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

April 30, 2013

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

        Robert Wayne Gillikin , II
        Rutter Mills LLP
        160 W Brambleton Ave.
        Norfolk, VA 23510

        Kent Pendleton Porter
        United States Attorney Office
        101 W Main St.
        Suite 8000
        Norfolk, VA 23510

        Fernando Galindo, Clerk

By _____
      Deputy Clerk

_____, 2013